NUMBER 13-04-010-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

MARIA ESTER MARTINEZ,                                         Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

             On appeal from the County
Court at Law No. 5

                           of Hidalgo
County, Texas.

 

 

 

                              O P I N I O N

 

          Before Chief Justice Valdez and Justices Castillo
and Garza

                                  Opinion by Justice Castillo

 








A jury convicted appellant Maria Ester Martinez of
theft by deception by a public servant.[1]  The trial court imposed a thirty-day sentence
in jail, suspended the sentence and ordered community supervision for ninety
days, ordered $298.85 restitution, and assessed a $300 fine.  Martinez raises five issues on appeal.[2]  Because we find the evidence factually
insufficient to sustain the conviction, we reverse and remand for a new trial.

I.  BACKGROUND









Martinez was the cafeteria manager at Morris Middle
School ("MMS") in the McAllen Independent School District
("MISD").  One of her duties
was to count proceeds from cafeteria and snack bar sales, complete a deposit
slip, and turn over the money for safekeeping in, among other places, a
secured, marked bank bag.  One such
deposit was twenty dollars short of the $298.85 Martinez indicated on the
deposit slip.  The police officer
employed by the district, who attempted the deposit, returned the bag and its
contents to the school.  In the presence
of a cafeteria employee, Martinez located the missing twenty-dollar bill on her
desk.  Martinez opened the returned bag,
counted the deposit, added the twenty dollars, locked the bag, and took the bag
to the front office.  The $298.85 deposit
did not reach the MISD bank account assigned to MMS. 

The State filed an information in the county court
at law, charging Martinez with theft by deception by a public servant, a class
A misdemeanor.[3]  After entering a judgment of conviction and
sentence, the trial court denied Martinez's motion for new trial.  This appeal ensued.  

II. JURISDICTION [4]








By her first issue, Martinez asserts that article
4.05 of the Texas Code of Criminal Procedure vested exclusive subject matter
jurisdiction in the district court over an offense charging her with
"official misconduct" for theft as a public servant.[5]  Tex.
Code Crim. Proc. Ann. art. 4.05 (Vernon 2005).  The State responds that article 5, section 8
of the Texas Constitution[6]
and section 4.07 of the code of criminal procedure[7]
allow concurrent original jurisdiction in both the district and county courts
over misdemeanors involving public servants.[8]

A. 
"Official Misconduct"








We must determine whether the misdemeanor charged in
this case was exclusively a district court offense.  Martinez asserts that the information alleges
an "official misconduct" offense. 
"Official misconduct" is now styled as "abuse of official
capacity."  Tex. Pen. Code Ann. _39.02 (Vernon 2003). 
A public servant commits an offense if, with intent to obtain a benefit
or with intent to harm or defraud another, he intentionally or knowingly (1)
violates a law relating to the public servant's office or employment, or (2)
misuses government property, services, personnel, or any other thing of value
belonging to the government that has come into the public servant's custody or possession
by virtue of the public servant's office or employment.  Id. 
"For a criminal act to constitute official misconduct, it must be
both willful and related to the duties of the defendant's office."  State v. Hall, 829 S.W.2d 184, 188 (Tex.
Crim. App. 1992); see  Emerson
v. State, 727 S.W.2d 267, 268-69 (Tex. Crim. App. 1987) (en banc); Gallagher
v. State, 690 S.W.2d 587, 593 (Tex. Crim. App. 1985); Robinson v. State,
470 S.W.2d 697, 699 (Tex. Crim. App 1971) (construing predecessor statute). 

In general, district court jurisdiction
"consists of exclusive, appellate, and original jurisdiction of all
actions, proceedings, and remedies," except in cases where the law confers
jurisdiction "on some other court" or tribunal.  Tex.
Const. art. V, ' 8.  The
specific grant of jurisdiction for an offense alleging official misconduct is
found in article 4.05 of the code of criminal procedure, which vests district
courts with jurisdiction "in criminal cases of the grade of felony, and of
all misdemeanors involving official misconduct."  Tex. Code Crim. Proc. Ann.
art. 4.05 (Vernon 2005).  Thus, a
district court has no jurisdiction over misdemeanors, except (1) those
involving official misconduct, or (2) where the law confers jurisdiction on
some other court.  Id.; Tex. Const. art. V, ' 8. 

B. 
Classification of an Offense Involving a "Public Servant"








The information alleged theft by deception by a
public servant, a violation of section 31.03(f)(1) of the penal code.[9]  As in all theft cases, the amount alleged
stolen  controls the classification level
of the offense.  Tex. Pen. Code Ann. _31.03(e) (Vernon Supp. 2005).  Here, the alleged amount is "$50 or more
but less than $500."  The offense is
a class B misdemeanor if the value of the property stolen is $50 or more but
less than $500.  Tex. Pen. Code Ann. ' 31.03(e)(2)(A)(i) (Vernon Supp. 2005).  However, because the information alleges an
offense by a "public servant," the classification is elevated to the
next higher category of the charged offense. 
Tex. Pen. Code Ann. ' 31.03(f) (Vernon Supp. 2005).  Thus, section 31.03(f)(1) governs and the
Class B category is increased to the next higher category of the offense,
namely, Class A.  Id. 

 C.  Jurisdiction Analysis








By its plain terms, the information alleged theft by
deception by a public servant.[10]  The statutory construct in penal code section
31.03(f) contemplates an increase in the category of offense because the
accused is a charged as a public servant.[11]  The information sufficiently alleged theft by
deception by a public servant, a Class A misdemeanor.[12]  See Tex.
Code Crim. Proc. Ann. arts. 21.21, 21.23 (Vernon 1989); see also id.
art. 21.11.  Because the allegation in
the information is a charge against a "public servant" and section
31.03(f)(1) applies, then under article 4.07, a county court has jurisdiction
over a Class A misdemeanor information alleging theft by deception by a public
servant.  Accordingly, jurisdiction
properly vested in the county court under article 4.07 and article V, section 8
of the Texas Constitution.  We need not
decide whether the complained-of conduct constitutes official misconduct
because the second exception, granting jurisdiction if the law confers
jurisdiction on some other court, applies and is dispositive.  Tex.
Const. art. V, ' 8; Tex. R.
App. P. 47.1.  We overrule
Martinez's first issue. 

III.  LEGAL
SUFFICIENCY

By her fourth issue, Martinez asserts that the
evidence is legally insufficient to prove the essential elements of theft by
deception by a public servant.  The State
counters that the evidence is legally sufficient to sustain the conviction.

A.  Scope and Standard
of Review








A legal sufficiency challenge requires us to review
the relevant evidence in the light most favorable to the verdict and then
determine whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.   Escamilla v. State, 143 S.W.3d 814,
817 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443 U.S. 307,
319 (1979)); Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App.
2003) (en banc).  This standard is
designed to give full play to the jury's responsibility fairly to draw
reasonable inferences from basic facts to ultimate facts.  See Sanders v. State, 119
S.W.3d 818, 820 (Tex. Crim. App. 2003). 
The standard is the same for both direct and circumstantial evidence
cases.  Guevara v. State, 152
S.W.3d 45, 49 (Tex. Crim. App. 2004); Kutzner v. State, 994 S.W.2d 180,
184 (Tex. Crim. App. 1999).








We consider all the evidence that sustains the
conviction, whether properly or improperly admitted.  Conner v. State, 67 S.W.3d 192, 197
(Tex. Crim. App. 2001) (citing Garcia v. State, 919 S.W.2d 370, 378
(Tex. Crim. App. 1994) (en banc)); see Moff v. State, 131 S.W.3d 485,
489-90 (Tex. Crim. App. 2004). 
Similarly, we consider all the evidence that sustains the conviction,
whether submitted by the prosecution or the defense, in determining the legal
sufficiency of the evidence.  King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); Cook v.
State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993) (en banc).  In this review, we are not to reevaluate the
weight and credibility of the evidence; rather, we act only to ensure that the
jury reached a rational decision.  Muniz
v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993) (en banc); see  King, 29 S.W.3d at 562.  We are mindful that every fact need not point
directly and independently to the accused's guilt.  Vanderbilt v. State, 629 S.W.2d 709,
716 (Tex. Crim. App. 1981).  A conclusion
of guilt can rest on the combined and cumulative force of all the incriminating
circumstances.  Id.; Beardsley
v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987) (en banc).  

We measure the legal sufficiency of the evidence
against the elements of the offense as defined by a hypothetically correct jury
charge for the case.  Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
This standard of legal sufficiency ensures that a judgment of acquittal
is reserved for those situations in which there is an actual failure in the
State's proof of the crime, rather than a mere error in the jury charge
submitted.  Id.  If we reverse a criminal case for legal
insufficiency, we reform the judgment of conviction to reflect conviction for a
lesser offense only if a jury charge on the lesser offense was either submitted
or requested, but denied.  Collier v.
State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999).  Otherwise, we vacate the judgment of
conviction for legal insufficiency and order a judgment of acquittal.  Swearingen, 101 S.W.3d at 95.

B.  Elements
of Theft by Deception

The information charged Martinez with theft of U.S.
currency by deception by a public servant. 
The hypothetically correct jury charge against which we measure the
sufficiency of the evidence would ask the jury if Martinez, (1) on or about
August 27, 2002, (2) unlawfully appropriated U.S. currency (3) with the intent
to deprive (4) Carmen Ocanas Lerma, the owner, of the property (5) by deception
(6) while acting as a public servant and (7) while in possession of the
property by virtue of her public servant status.  See Tex.
Pen. Code Ann. ' 31.03(f)(1) (Vernon Supp. 2005).  













"Appropriate" means to bring about a
transfer of title or other non‑possessory interest in property or to
acquire or otherwise exercise control over property.  See Tex.
Pen. Code Ann. ' 31.01(4)(B) (Vernon Supp. 2005).  Appropriation must be accompanied by the
specific intent to deprive the owner of property.  Mills v. State, 722 S.W.2d 411, 415
(Tex. Crim. App. 1986).  The penal code
defines several ways in which an appropriation is unlawful, including
"without the owner's effective consent." Tex. Pen. Code Ann. ' 31.03(b)(1), ' 31.01(4) (Vernon Supp. 2005); Stockman v. State,
826 S.W.2d 627, 632 (Tex. App.BDallas 1992, pet. ref'd).  Thus, the crucial element of theft is the
deprivation of property from the rightful owner, without the owner's consent,
regardless of whether the defendant at that moment has taken possession of the
property.  Stewart v. State, 44
S.W.3d 582, 589 (Tex. Crim. App. 2001) (en banc).  Consent is not effective if induced by
deception or coercion.  Tex. Pen. Code Ann. ' 31.01(3)(A) (Vernon Supp. 2005).  Section 31.01(1) of the penal code contains
five definitions of "deception."  Id. ' 31.01(1). "Deception" means, among other
things, creating or confirming by words or conduct a false impression of law or
fact that is likely to affect the judgment of another in the transaction, and
that the actor does not believe to be true.[13]  Id. '
31.01(1)(A).  "Deprive" means
to withhold property from the owner permanently.  Id. '
31.01(2)(C). The intent to deprive is determined from the words and acts of the
accused.  Griffin v. State, 614
S.W.2d 155, 159 (Tex. Crim. App. 1981); Roberson v. State, 821 S.W.2d
446, 448 (Tex. App.BCorpus Christi 1991, pet. ref'd).  "Effective consent" includes
consent by a person legally authorized to act for the owner.  Tex.
Pen. Code Ann. ' 31.01(3) (Vernon Supp. 2005).  Consent is not effective if induced by
deception.  Id. ' 31.01(3)(A). 
Lack of consent and intent to deprive may be shown by circumstantial
evidence.  Griffin, 614 S.W.2d at
159. 

C.  The Record

Generally, Martinez asserts that the evidence is
legally insufficient to sustain each of the elements of the offense of theft by
deception by a public servant.  However,
in particular, Martinez challenges the elements of (1) ownership and (2) intent
to deprive by deception.  See Tex. R. App. P. 38.1(g), (h).  We turn to the record evidence and, based on
Martinez's legal sufficiency challenge, we review the evidence in the light
most favorable to the verdict.  See
Jackson, 443 U.S. at 319.  








Martinez testified on her own behalf and denied
culpability.  She was the cafeteria
manager at MMS ultimately responsible for the cafeteria's daily deposits of
proceeds from cafeteria and snack bar sales. 
She was assigned three bank bags for the deposits, numbers 2116, 2117,
and 2119.  Only Martinez and the bank had
the keys to the bags assigned to her.  On
August 27, 2002, consistent with her employment duties, she completed a deposit
slip in the amount of $298.85 for proceeds of cafeteria sales.  She put one copy of the deposit slip with the
money into the locked bank bag and it was delivered to the front office.  Once the cafeteria deposit bags and other
office deposit bags were logged in at the office, they were kept locked in a
box, in a locked cabinet, in a locked office, until picked up by a school
district police officer and taken to the bank. 
Martinez understood that a police officer was assigned to pick up the
bags from the school and deliver them to the bank.  After a bank teller, Marisol Ozuna,
determined the deposit to be short by twenty dollars and notified her of the
shortage, Martinez requested Ozuna return the deposit to her.  Martinez had located the twenty-dollar bill
under some papers on her desk, while counting another deposit.  She placed the twenty-dollar bill in the
petty cash fund.  








On August 29, 2002, the office secretary, Velma
Cruz, advised Martinez that a bank bag with money was in Cruz's office.  Martinez obtained bank bag 2119 and walked to
the cafeteria to ask a cafeteria employee, Mirthala Zuniga, to witness the
recount of the bank bag funds.  Zuniga,
responsible for accounting daily cafeteria funds, accompanied her supervisor
Martinez to Martinez's office.  In
Zuniga's presence, Martinez counted the deposit, confirmed the shortage, added
the twenty-dollar bill previously found on her desk, placed the money in the
bag, and locked the bag.  Martinez
testified that, as Zuniga left the office, Martinez headed toward the front
office and the locked room.  Martinez
further testified that, on August 29, 2002, she walked out of her office with
two bank bags.  One contained the
corrected August 27, 2002, deposit, number 2119, and the other contained the
August 29, 2002, daily deposit, number 2116. 
She located and found an authorized person with a key to unlock the
secured area and unlock the secured filing cabinet that contained the red tool
box that would hold the deposit bags. 
Martinez identified assistant principal Marie Riley as the authorized
person present in the secured area.[14]  Martinez testified that, as she proceeded to
log the bags under standard procedure, Officer Dagoberto Rodriguez, the MISD
police officer in charge of transporting deposits, asked her to combine the
deposits into one bag to avoid his carrying multiple bags.  Martinez complied.  Martinez testified that bank deposit bag
number 2119 contained both deposits. 
Martinez further testified that the last time she saw the deposit was on
August 29, 2002, when she left the deposit with Officer Rodriguez in the
presence of assistant principal Riley.

Martinez acknowledged that she provided the
following written statement, admitted in evidence as part of the investigation
of the missing funds:[15]


The bank called me August 28, 2002 mid-morning to
inform me that the bank deposit for August 27, 2002 was incorrect.  The clerk asked me if she was to make the
deposit or return it back for correction. 
I then informed her to send it back to me.  On August 29, 2002, I brought is [sic] my
daily deposit.  I then return later to
turn in the corrected deposit for the 27th. 
The officer was picking up the daily deposits and had already sign [sic]
for the bags.  He told me to open the bag
he had and place the August 27th corrected deposit in the bag, which contained
the August 29, 2002 deposit.  I did this
action in front of him and the vice-principal, Mrs. Riley.  Therefore, there were two deposits in the
same bag #2119.  

 

Further, Martinez testified as follows on
cross-examination by the prosecutor:








Q:  Since
August of 2000, you had control over the bank bags and the money, is that
right?

A:  Yes,
ma'am.

Q:  And solelyBsolely you would be responsible for placing deposits
into bank bags, locking them and taking them to the drop‑off; is that
right?

 

A:  Yes.  I was the one who put the deposit in the bag.

Officer Dagoberto Rodriguez testified that, on or
about August 27, 2002, he was the sole officer who picked up all the deposit
bags at MMS and delivered them to the bank. 
He admitted he was assigned to investigate the missing funds complaint
and interviewed Martinez as part of his investigation.  He testified that he was responsible for and
picked up bags from all of the schools within the MISD.  He denied he asked Martinez to combine the
deposits into one bag.  He testified that
he met Martinez when the theft investigation ensued in December 2002.  Officer Rodriguez further testified that he
did not pick up any bags on August 29, 2002, the date Martinez maintained was
the date the conversation between them occurred about the bank bags.  








The jury heard that two logs admitted in evidence
demonstrated the custody of the bank bags on the dates in question.  The school log was located in the secured
area in the front office at MMS.  To
reach that log, the employee leaving a bank bag for pick-up by Rodriguez must
obtain the assistance of the principal, the principal's secretary, or either of
two assistant principals.  These four
individuals had keys to the locked office and to the locked file cabinet inside
the office.  Inside the locked file
cabinet was a red tool box that held the bags for transport to the bank.  Inside the red box was a log.  The employee leaving the bank bag documented
the date the bank bag was left, indicated the bank bag number, and initialed the
form.  The transport officer would then
initial the log when the bank bag was picked up.  

The jury heard that Officer Rodriguez maintained a
separate police log in his police unit to document the location where bank bags
were picked up, the bank bag numbers, and the time of pickup for
transport.  He maintained the police log
on a daily basis and secured the bank teller's initials as confirmation of the
total number of bags left with the bank. 
On a daily basis, Officer Rodriguez picked up bank bags from thirty-two
campuses within the school district.

Admitted in evidence, the school log shows, in
pertinent part:

         Date           
[Bag No.]                          Consignee                         Receipted
By

8-26-02          2117                           Mirthala
Zuniga[16]                               DR

8-27-02          2119                           Mirthala Zuniga                                  DR

8-28-02          2116                           Mirthala Zuniga                                  DR

8/29-02           2119                           Mary Ester Martinez              DR

8/29-02           3385                           Velma Cruz                                        DR

8/30-02           2117                           Mirthala Zuniga                                  DR








Admitted in evidence, four daily police logs show
that Officer Rodriguez picked up the following bank bags from the MMS
campus:  (1) on August 27, 2002, bank
bags 2117 and 2119; (2) on August 28, 2002, bag 2116; (3) on August 29, 2002,
no bank bags; and (4) on August 30, 2002, bags 2117, 2119, and 3385.  The documents contain Officer Rodriguez's
initials and initials Officer Rodriguez identified as bank tellers'
initials.  

Assistant principal Marie Riley testified she began
work at MMS a few weeks before the incident involving the missing funds.  She testified that cash handling procedures
were in place governing Martinez's handling of the deposit in question.  The procedure required Martinez to complete a
log sheet when leaving a bank bag in the office.  The persons with the key to the secured area
were the principal, Riley, another assistant principal, and the bookkeeper;
managers did not have a key.  Managers
had to ask either her or one of the other authorized persons to unlock the
secured room, unlock the filing cabinet, and open the red box to put the bags
in for pick up.  Riley testified that the
employee must complete the log and is never in the secured room alone.  On the prosecutor's direct examination, Riley
testified as follows:

Q:  Would it be proper procedure for a manager to
come in with a bank bag and for the armored car officer to walk in and ask them
to open their bank bag and put their deposit in another bag?

. . .

A:  No. . . . I would not allow it.

Riley further
testified, "We don't combine money into one bag unless she brings it that
way and I am not aware of it."








The bank teller,
Marisol Ozuna, testified that she was the teller on August 27, 2002, who
received the MISD deposit bags from Officer Rodriquez.  When the deposit in bag 2117 was
"worked" at the bank the next day, she found it to be twenty dollars
short.  Ozuna testified that the policy
then in effect was for the teller to make all deposits if the amount on the
deposit slip was within ten dollars of the actual amount counted in the bag.  If a discrepancy was ten dollars or less, the
bank made the deposit, noted it on the deposit slip, and sent the notated slip
back to the school in the bag with the police officer.  However, if a discrepancy was greater than
ten dollars, the policy was to call the school contact marked on the outside of
the bag and determine whether the school wanted the deposit made or returned to
the school without being deposited so that the correction could be made.  If the deposit was to be returned, the teller
would put the deposit slip and money back in the bag and send it back to the
school with the police officer.  She did
not recall this happening very frequently, but she remembered the discrepancy
with the August 27, 2002, deposit and she remembered calling Martinez.  Ozuna recalled that Martinez told her to
return the deposit to the school and Ozuna complied.  Officer Rodriquez further testified that he
remembered a bag being returned from the bank to the cafeteria in August 2002,
but he did not look in the bag.  He did
not recall if he gave the bag to Martinez. 








Mirthala Zuniga
testified that Martinez was in the cafeteria office with a bank bag and asked
Zuniga to go to her office to recount the deposit.  Zuniga observed while Martinez (1) opened the
bank bag, (2) counted the deposit, (3) determined it was short twenty dollars,
(4) added twenty dollars, (5) locked the bag, and (6) left to take the bag to
the front office.  Zuniga testified that
sometimes she would take the bags to the office and sign them in.  

Testimony conflicts as
to what happened next to the bag. 
Martinez testified that, when she took bag 2119 to the front office to
sign it in on August 29, 2002, Officer Rodriquez was already there to pick up
the bags and he told her to put the deposit into one of the bags that he had
already signed out.  Officer Rodriquez
did not recall picking up any bags on August 29, 2002.  Assistant principal Riley testified, contrary
to Martinez, that she did not recall witnessing Martinez put a deposit into a
bag already signed out by the officer. 
Evidence presented by both parties shows that the school's log, signed
by Officer Rodriguez and Martinez shows Martinez logged in the bag in question
on August 29, 2002.  The police log
reflects the date of pickup as August 30, 2002. 
The log does not show that he picked up any bags on August 29, 2002.

The deposit was never
made or received into the MISD bank account assigned to MMS.  Evidence reflects that the bank received
three locked and sealed bags on August 30, 2002, but a deposit for $298.85 was
not made.  Two bank tellers testified as
to the handling of the bank bags upon Officer Rodriguez's leaving them at the
bank. 








Marisol Ozuna, who
returned the initial deposit to Martinez that was twenty dollars short,
testified that she worked one of the bags Officer Rodriguez left on August 30,
2002.  She confirmed that the initials on
the police log indicate the bank received the bags for deposit.  She confirmed that on August 30, 2002, the
bank received bags 2117, 2119, and 3385. 
She worked two out of the three deposits made.  The two deposits were in one bag.  Ozuna testified she could not identify which
bag she worked because the bank does not keep records.  Bank teller Priscilla Barrera testified that
she worked one bag that Officer Rodriguez left on August 30, 2002.  She did not know which bag she worked.  She testified she did not work the other two
bags Officer Rodriguez left.  

Bank deposit slips
were admitted in evidence involving cafeteria funds.  One bank deposit slip dated August 28, 2002,
shows it was worked the same day.  Two
deposit slips dated August 30, 2002 indicate they were worked the same
day.  The jury heard that MISD police did
not investigate events at the bank involving the three bags Officer Rodriguez
left at the bank on August 30, 2002, for funds deposit.

D.  Legal Sufficiency Analysis

We focus our analysis
on the question of legal sufficiency of the evidence to support the challenged
elements of the charged offense, namely, (1) ownership and (2) intent to
deprive by deception.  

1.  Ownership








An "owner"
is a person who has title to the property, possession of the property, whether
lawful or not, or a greater right to possession of the property than the
actor.  Tex.
Pen. Code Ann. _1.07 (a) (35) (Vernon Supp. 2005).  "Possession" means actual care,
custody, control, or management.  Id.
_1.07 (a) (39).  The issue of "ownership" goes to
the scope of the property interest protected by the law and is intended to
protect all ownership interests in property from criminal behavior.  Freeman v. State, 707 S.W.2d 597, 603
(Tex. Crim. App. 1986) (en banc).  The
Legislature, in defining the word "owner" as it did, clearly gave the
word an expansive meaning:  anyone having
a possessory interest in the property through title, possession, whether lawful
or not, or a greater right to possession to the property is an owner of the
property.  Id.  In criminal law the issue of ownership, an
element of the offense, is a question of fact for the jury to determine.  See id. at 604; see also Villalobos
v. State, 951 S.W.2d 232, 234 (Tex. App.BEl Paso 1997, no pet.) (noting that the State is
not required to explain why a particular person is named as owner in a theft
indictment). 

The information
identifies Carmen Ocanas Lerma as the owner of the currency.  Lerma was the Food Services Director for MISD
and Martinez's superior.  She testified
as to the cash handling procedure in place for handling proceeds from cafeteria
sales and that the procedure governed Martinez. 
Accounting personnel reported the missing funds, and she pursued an
investigation.  Jose Perez, the MMS
principal, testified that, while apprised of the missing funds because his
campus was involved, he was not involved in the investigation.  He identified Lerma as the district-wide
supervisor for cafeteria operations. 
Martinez did not claim ownership in the proceeds of cafeteria sales.








A rational trier of
fact could have found that Lerma, by virtue of her position, had a right to
possession of the currency superior to that of Martinez, and thus, the evidence
meets the statutory definition of "owner."  Tex.
Pen. Code Ann. _1.07 (a)(35), (39) (Vernon Supp.
2005).  Moreover, to the extent Martinez
exercised control over the property, the control was "unauthorized."  See Freeman, 707 S.W.2d at 605.  After viewing the evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could have
found beyond a reasonable doubt the essential element of ownership.  Jackson, 443 U.S. at 319; Escamilla,
143 S.W.3d at 817.

2.  Intent to Deprive by Deception

A person acts
intentionally, with respect to the nature or result of his conduct, when it is
his conscious objective or desire to engage in the conduct or cause the result.
 Tex. Pen. Code Ann. ' 6.03(a) (Vernon
2003).  A person acts knowingly with
respect to the result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.  Id.
' 6.03(b).  The intent to deprive is determined from the
words and acts of the accused.  Griffin , 614 S.W.2d at 159; Roberson,
821 S.W.2d at 448.

While Martinez asserts
that the State did not prove the essential elements of intent to deprive by
deception, the State counters that the evidence shows Martinez did not take in
the money, prepare the deposit, and send the money to the bank as she purported
to do as part of her job description. 
The State's theory encompassed the statutory definition of
"deception," namely, that Martinez created or confirmed by her
conduct a false impression that the bag she turned in contained the corrected
deposit.  On that representation, she
gained entry into the secured area, and, according to procedure, Officer
Rodriguez transported the bag Martinez left. 
The corrected deposit remains missing.  








Viewed in the light
most favorable to the verdict, the evidence shows that Martinez was the last
person with the bag with the corrected deposit. 
Zuniga observed her leave the office with the bag.  Martinez logged in one bag in the secured red
box.  If Martinez left her office with
two bags as she testified, she diverged from her usual procedure by opening a locked
bag and combining the deposits.  Officer
Rodriguez denied the August 29, 2002 encounter in which Martinez claimed he
requested she combine the two bags. 
Assistant principal Riley testified she would not have allowed combining
the contents of bank bags, the procedure Martinez described, had it occurred in
Riley's presence.  

The police log
corroborates Officer Rodriguez's testimony that he did not pick up bank bags on
August 29, 2002.  The school log shows
that, on August 29, 2002, Martinez was the sole individual to place a bank bag
in the secure area.  She secured bank bag
2119.  The police log shows that bag 2119
was delivered to the bank and, by the initials from a bank teller on the log,
was received by the bank.  The corrected
deposit Martinez claimed was in the bag was never found.  








Martinez testified
that the this was the first time during her term as food service manager[17]
that (1) a shortage occurred in a deposit she counted, (2) a shortage was
detected in a bank deposit, (3) a deposit was returned for that reason, (4) a
deposit was returned at her request, (5) she met the deposit transport officer
in the course of her seventeen months as a manager, (6) combined the contents
of two bank bags, and (7) a deposit was not made because it was missing.  

We are mindful that
the jury is the sole judge of the credibility of the witnesses and of the
strength of the evidence.  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  We do not resolve any conflict of fact or
assign credibility to the witnesses, as it was the function of the trier of
fact to do so.  See Adelman v. State,
828 S.W.2d 418, 421 (Tex. Crim. App. 1992) (en banc); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991) (en banc).  Instead, our duty is only to determine if
both the explicit and implicit findings of the trier of fact are rational by
viewing all of the evidence admitted at trial in a light most favorable to the
verdict.  Adelman, 828 S.W.2d at
422.  In so doing, any inconsistencies in
the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843. 

The evidence used to
convict Martinez was solely circumstantial. 
However, the lack of direct evidence is not dispositive of the issue of
guilt.  Guevara, 152 S.W.3d at
49.  Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor.  Id. 
Circumstantial evidence alone is sufficient to establish guilt.  Id. 








By its verdict, the
jury rejected Martinez's claim of innocence. 
We assume that the jury resolved conflicts in testimony, weighed the
evidence, and drew reasonable inferences in the manner that supports the
verdict.  Griffin, 614 S.W.2d at
159.  In reaching its decision, the jury
could have inferred that the incidents that occurred for the first time
affecting solely the missing deposit and leading to its disappearance were not
a mere coincidence.  Thus, viewing the
evidence in the light most favorable to the verdict and measuring it against
the essential elements of theft by deception as defined in a hypothetically
correct jury charge, we conclude that a rational jury could have found the
following:  (1) Martinez appropriated the
currency at some time after leaving the cafeteria and before entering the front
office; (2) she acquired or otherwise exercised control over the money since
she was the only one with the key and she could have opened the bag in the
hallway; (3) Martinez intended to deprive the owner of the currency knowing it
was not hers to keep; (4) she either did not place a deposit in the bag, did
not have two bags, or did not combine deposits in one bag; and (5) she stated
that there was an extra deposit in the bag when there was not.  Zuniga testified that Martinez walked out of
the office with one bag.  








On this record, we
cannot say that a jury would have unfairly or irrationally inferred that
Martinez appropriated the currency with the specific intent to deprive the
owner of it by deception.  See Jackson,
443 U.S. at 319; Sanders, 119 S.W.3d at 821; Malik, 953 S.W.2d at
240; Griffin, 614 S.W.2d at 159. 
We conclude that Martinez's acts were sufficient evidence from which a
rational trier of fact could have inferred an intent to deprive by deception as
the term is defined in section 31.01(1)(A) of the penal code.  Tex.
Pen. Code Ann. ' 31.01(1)(A) (Vernon
Supp. 2005).  This is not to say that the
evidence was uncontested or free from contradiction.  However, the jury was the sole trier of
facts.  We conclude that the evidence was
such that a rational jury could have found the essential elements of the
offense beyond a reasonable doubt.  Escamilla,
143 S.W.3d at 817.  We overrule
Martinez's fourth issue.

IV.  FACTUAL SUFFICIENCY

By her fifth issue,
Martinez asserts that the evidence is factually insufficient to prove any of
the essential elements of theft by deception by a public servant.  The State counters that the evidence is
factually sufficient to sustain the conviction. 

A.  Scope and Standard of Review








We are
constitutionally empowered to review the judgment of the trial court to
determine the factual sufficiency of the evidence used to establish the
elements of the charged offense.  Johnson
v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000) (en banc).  The Texas Court of Criminal Appeals has
restated the factual sufficiency standard of review to provide that there is
only one question to be answered in a factual sufficiency review:  "Considering all of the evidence in a
neutral light, was a jury rationally justified in finding guilt beyond a
reasonable doubt?"  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  However, there are two ways in which the
evidence may be insufficient.  Id.  First, when considered by itself, evidence supporting
the verdict may be too weak to support the finding of guilt beyond a reasonable
doubt.  Id.  Second, there may be both evidence supporting
the verdict and evidence contrary to the verdict.  Id. 
Weighing all the evidence under this balancing scale, the contrary
evidence may be strong enough that the beyond‑a‑reasonable‑doubt
standard could not have been met, so the guilty verdict should not stand.  Id. 
A clearly wrong and unjust verdict occurs where the jury's finding is
"manifestly unjust," "shocks the conscience," or
"clearly demonstrates bias." Prible v. State, No. AP‑74,487,
2005 Tex. Crim. App. LEXIS 110, at *15 (Tex. Crim. App. Jan. 26, 2005)
(designated for publication). 

When the State bears
the burden of proof, the proof of guilt is factually insufficient if it is so
obviously weak as to indicate that a manifest injustice has occurred or if it
is greatly outweighed by contrary proof. 
Zuliani v. State, 97 S.W.3d 589, 593‑94 (Tex. Crim. App.
2003).  In determining the factual
sufficiency of the elements of the offense, we view all the evidence neutrally,
not through the prism of "the light most favorable to the
prosecution."  Johnson, 23
S.W.3d at 6‑7 (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996)).  However, we approach
a factual sufficiency review with appropriate deference to avoid substituting
our judgment for that of the fact finder. 
Id.  Our evaluation should
not intrude substantially on the fact finder's role as the sole judge of the
weight and credibility given to witness testimony.  Id. 
We must consider the most important evidence that the appellant claims
undermines the jury's verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Every fact need not point directly and
independently to the accused's guilt.  Vanderbilt,
629 S.W.2d at 716. 








In a factual
sufficiency review, we view all the evidence in a neutral light, both for and
against the finding, and set aside the verdict if "proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof."  Vodochodsky v.
State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005) (citing Johnson,
23 S.W.3d at 11); Goodman v. State, 66 S.W.3d 283, 285‑86 (Tex.
Crim. App. 2001)); Zuliani, 97 S.W.3d at 593‑94.  In the opinion, we "show our work"
when we consider and address the appellant's main argument for urging insufficiency
of the evidence.  See Tex. R. App. P. 47.1; Sims, 99
S.W.3d at 603 ("[A] proper factual sufficiency review must include a
discussion of the most important and relevant evidence that supports the
appellant's complaint on appeal."). 
This practice benefits the parties, maintains the integrity of the
justice system, and improves appellate practice.  Id. 


This Court measures
the factual sufficiency of the evidence against a hypothetically correct jury
charge.  Adi v. State, 94 S.W.3d
124, 131 (Tex. App.BCorpus Christi 2002,
pet. ref'd).  If we reverse a criminal
case for factual insufficiency, we vacate the judgment of conviction.  Clewis, 922 S.W.2d at 133‑34.  We remand for a new trial a criminal case
reversed for factual insufficiency so a second jury may have the chance to
evaluate the evidence.  Swearingen,
101 S.W.3d at 97.  

B.  The Record

Contrary evidence
shows that Lerma, Martinez's superior, addressed the missing funds by
memorandum dated December 2, 2002.  In
that document, admitted in evidence, Lerma states in part relevant to our
analysis:








There is a matter of a
missing deposit from Morris Middle School Cafeteria.  It is in the amount of $298.85.  The deposit is for August 27, 2002.  It was somehow misplaced in transit from the
school to the bank. 

For purposes of our
factual analysis, we look to events occurring from the time Martinez logged bag
2119 to the bag's transit from the school to the bank.  The school log reflects activity involving
the three bank bags assigned to Martinez, numbers 2116, 2117, and 2119:

8-27-02       2119                     Mirthala
Zuniga                         DR

8-28            2116                     Mirthala
Zuniga                         DR

8/29            2119                     Mary
Ester Martinez                  DR

8/29            3385                     Velma
Cruz                               DR

8/30            2117                     Mirthala
Zuniga                         DR

On the school log is a
handwritten statement indicating, "Note: This date represents the day the
deposit is placed in the red box and not the date it was picked up!"  Officer Rodriguez testified that he penned
the statement on the log because of statements he heard once he began his
investigation of the missing deposit. 
Officer Rodriguez testified that his initials on the school log indicate
that he picked up the bags.  He also
testified that he devised both logs used for transport of school deposits.  He explained that he followed the forms used
by a courier MISD previously used.  On
the school log, aside from the columns indicated above, are two other
columns.  One indicates, "said to
contain value of," and the other, "bag returned."  No one leaving bank bags in the secure room
completed the columns; thus, on the entire log, the column is blank.  








Officer Rodriguez's
police logs for the same period reflected in the school log above show the
following for Morris Middle School pick-ups:  

#Bags to      Schools        Amount
of Bags     Time Picked 

schools                                                             Up

 

8/27/02                    2              Morris          2117, 2119    14:12

 

8/28/02                    1              Morris          2116[18]                     14:15

 

8/29/02                    0              Morris          

 

8/30/02                    3              Morris          2117,2119 3385      14:14

 

Officer Rodriguez
testified that, when a bank bag was left in the red box after he was at the
school, then the bag would remain in the red box until his return the next day.


Officer Rodriguez
confirmed that he was at the school on August 29, 2002, the date Martinez
testified she saw him.  On direct
examination, he testified as follows:

Q:  Okay. 
And now explain to us once again how August 30th it shows one number
here and you pick up three bags.  

 

A:  Again, apparently these bags were placed in
the red box.  On August 29th, they were
placed in the red box after I had gone by that school already. 

 








Officer Rodriguez did
not recall seeing Martinez that day.  He
testified he met her on December 6, 2002, when he interviewed her as part of
the investigation of the missing funds. 
He testified that as part of his investigation, he spoke with assistant
principal Riley, and Riley did not remember the incident Martinez described
involving the officer's request that she combine the deposits.  He denied he requested that Martinez open bag
2119 and combine the funds.  Assistant
principal Riley did not deny that she was the authorized person who opened the
secured room and the filing cabinet for Martinez on that day.  Martinez recollected that Riley might not
recall the events because a student altercation occurred that day.  

Officer Rodriguez also
testified that as a matter of procedure, when he was "handed the
bags," at the school, he would tug on them to make sure they were
locked.  Thus, the record demonstrates
that someone "handed" him the two cafeteria bags in question, 2117
and 2119, before transport to the bank. 
However, the evidence does not establish that person's identity.  Officer Rodriguez testified that the bank
teller's initials at the bottom of each police log page verified that the bags
were both received and secured stating, "They count the bags and they
check the bag numbers and they check them that they are secured and that they
signBthey sign off on it,
on the bottom of theBof my log."  The police logs reflect initials at the
bottom of each page.  However, bank
teller Ozuna testified that, upon receipt of a copy of the police log and the
bags from the transport officer, the "tellers would verify that all the
bags . . . [brought] in corresponded to whatever bags were in the box, if theyBmatchedB."  Ozuna testified as follows on further direct
examination:

Q:  Okay. 
And so you would go through and double-check that you received those
bags; is that correct?

 

A:  Yes, ma'am.

 

Q:  Would you do anything else with the bags?








A:  Huh-uh.

 

Q:  Nothing else is done with the bags as far as
. . . receiving them from the armored car driver?

 

A:  After we've verified everything, of course we
start working bags, start working bags.  

 

Q:  Okay. 
What is the bank's policy, procedure, if there is a bag that's open or
if there's a bag that looks tampered with?

 

A:  We notify the school or the person whose name
appears on the bag.

 

Q:  Okay. 
And what else is done, if anything, at that time that you notice a bag
may be opened or tampered with?

 

A:  After we've called the person, you know, if
everythingBif the deposit's fine
and everything, nothing.  If it occurs
that there's something missing or short or over, of course the person whose
name appears on the bag tells us either they want for us to show the deposit
over or short or they want for us to send the bag back to them.

 

Ozuna did not testify
that the bank confirmed, upon receipt, that the bags were secured.  When re-called to testify, Ozuna stated that
the initials on the police log verify "the bags' numbers and the total
number of bags. . . .  As soon as we
verify them, we initial off on them on Mr. Rodriguez's . . . copy. . . .  That's an initial made by one of the tellers
that she verified that we received the bags that are stated on . . . the
form."  Thus, the initials verified receipt
and quantity of the bags.  








Bank teller Ozuna also
testified that the bank received three bags on August 30, 2002, and she worked
two deposits dated August 30, 2002.  Both
deposits were from one bag.  She did not
know which of the three bags received that day she worked.  She testified on cross-examination as
follows:  

Q:  Three bags came in that day from August 30th
according to the receipts you've been looking at, 2117, 2119 and 3385.  The two deposit slips you just spoke of that
you worked out . . . do you remember which bag they came out of?

 

A:  No, sir, I sure don't.

 

Q:  And y'all don't keep those kind of records at
the bank, do you?

 

A:  No, sir.

 

Q:  And the other two bags, did you work them?

 

A:  No, sir.

 

Q:  When bags come from various school campuses
at McAllen ISD, do you ever open a bag and it ends up there's nothing in it?

 

A:  Yes, sir.

 

Q:  What do you do then with an empty bag?

 

A:  When there's nothing in it, we just send it
back.

 

Q:  You make any phone calls to ask why did you
send me an empty bag?

 

A:  We don't.  Just assuming that they probably, you know,
forgot to keep it.

 








She further testified
that, even if a deposit slip is the sole item in the bank bag, "We would
probably send it back, just, you know, assuming they're thinking that they
probably just forgot to get the [money], maybe forgot to take [the deposit slip]
out of the bag."  Importantly, Ozuna
earlier testified that the bank policy required that the teller call the school
contact identified on the bag if the deposit slip showed a discrepancy of
greater than ten dollars. 

Bank teller Barrera
testified that the cut-off time for deposits is 2:30 p.m.; after that time, the
deposit is credited for the next business day. 
She testified that on Saturday, August 31, 2002, she worked two
cafeteria deposit slips dated August 29, 2002.[19]  On direct-examination, the following exchange
ensued:

Q:  Now, did you receive those deposits out of a
bank bag like this?

 

A:  Yes, ma'am.

 

Q:  Okay. 
Now . . . there are several bags that are brought in from high school.

 

A:  Uh-huh.

 

Q:  Would you have worked deposits out of a
different bag or the same bag as another teller?

 

A:  No.  We
all worked out of one bag.  Back then we
would work out ofBwe would help each
other out, but on that day I didn't.  I
worked only the bag that I had . . . sealedBI locked it up and we put it in the basket.

 

Q:  Okay. 
So after you finished working that bag you put it in theB

 

A:  Right.

 

Q:  Bin the bag?

 

A:  Uh-huh.

 

Q:  Had anybody else worked that bag before you?

 








A:  No, ma'am.

 

Q:  Okay. 
So if another teller worked another bag, you didn't work that same bag?

 

A:  Not that day.

 

On cross-examination,
Barrera testified as follows:

 

Q:  How many bags from Morris Junior High School
came to you, to work at your teller window, that day, on Saturday?

 

A:  On Saturday, just that one.

 

Barrera testified that
she did not know who worked the other bags. 


C.  Factual Sufficiency Analysis

Viewed in a neutral
light, the evidence is not free of contradictions.  The statement of Martinez's superior Lerma is
compelling:  "The deposit is for
August 27, 2002.  It was somehow
misplaced in transit from the school to the bank."  This connotes that, at a minimum, the ongoing
investigation had shifted from Martinez. 
However, the evidence at trial demonstrates that on the date in question
(1) the investigation focused on Martinez despite unquestioned access, (2)
adequate measures were not in place to secure deposits, and (3) the
investigation never traced the deposit in question once the cafeteria bags were
received and accepted by the bank.  In
this regard, as part of our factual sufficiency analysis, we summarize the
"most important evidence."  Zuniga,
144 S.W.3d at 484‑85; Sims, 99 S.W.3d at 603.           

1.  Access

(a).  Access Up to and Including the Secured Office








Martinez was an
employee of MISD and by virtue of her position she received public funds for
deposit.  The parties do not dispute she
was a public servant.  The evidence
further shows that (1) she was hired by MISD in 2000 as cafeteria manager, (2)
accountability for the monies from the cafeteria was within her job
responsibility, (3) other than the bank, she was the only one with the keys to
the money bags, and (4) she was responsible for counting cafeteria proceeds and
securing the bank deposits to be made. 
On August 30, 2002, Officer Rodriguez picked up and delivered to the
bank two cafeteria bags, numbers 2117 and 2119, and one office bag.  The school log shows that bag 2116, the only
other assigned bag to Martinez, was logged in on a prior day.  Martinez admitted that the locked bank bag
containing the deposit for $298.85 was in her possession.  She testified that the last time she saw the
bag and deposit was when she left both cafeteria bags in one bag with Officer
Rodriguez. 








Officer Rodriguez
denied the encounter with Martinez. 
Assistant principal Riley, the witness Martinez identified as present at
the time of the claimed exchange with Officer Rodriguez, did not recall the
incident.  However, Riley also testified
that a person with the keys to open the secured room must open the filing
cabinet and open the red box that holds the money for pickup.  Martinez and Officer Rodriguez did not have a
key to the locked room.  Riley also
testified that the manager must log in the bank bags and "one of us will
stay in while the manager completes the log."  Riley further testified that the manager is
"never in the room alone." 
Someone provided access to Martinez to the secured room consistent with
procedure.  Martinez identified Riley as
that authorized person.  Riley was not
asked, nor did she deny, that she was the person who provided access that day.

The school log
demonstrates that Martinez gained authorized access to the locked room, the
locked file cabinet, and the red box in the file cabinet.  Standard procedure as to completing the
school log demonstrates that, by her documentation, Martinez left bag 2119 with
the funds in it in the red box.  Other
than Martinez's testimony, there is no evidence that she combined the two bags
in her possession or that she combined them at the officer's request.  However, Officer Rodriguez left two cafeteria
bags at the bank that day.  No testimony
was adduced as to the contents of the second cafeteria bag, assuming Martinez
explained the contents of one.  

(b).  Access By Bank Personnel

Officer
Rodriguez's  police log demonstrates that
two cafeteria bags were picked up and delivered to the bank.  The bank, by initials on Officer Rodriguez's
log, confirmed delivery of two cafeteria bags, not one.  However, the bank did not confirm delivery of
the specific bags identified on Officer Rodriguez's log.  The bank worked two of the three bags Officer
Rodriguez left.  For the period in
question, the bank worked four deposits. 
However, the State adduced no evidence that the deposits were from the
same or different bags.  The State
adduced no evidence as to which bags were worked.  The evidence establishes that the bank did
not keep records as to which bags were worked and by whom and which deposits
they contained.  








The evidence indicates
that, at the time in question, more than one bank teller worked a bag.  More importantly, evidence demonstrates that,
contrary to Officer Rodriguez's testimony, a bank teller's initials on the police
log confirmed only that the bags were received and the number of bags received,
not that they were secure and locked. 
Moreover, the State did not adduce evidence that bank tellers Ozuna and
Barrera received bags that were locked and secured before they worked them.  Further, the State did not adduce evidence as
to who maintained custody of the cafeteria bags from receipt through
processing.  Bank teller Barrera's
testimony indicates she received the bag she worked the day after the bank
accepted them from Officer Rodriguez. 
The record does not show what bank personnel did with the bags in the
interim.

The bank worked the
day's cafeteria deposit for August 29, 2002, documented by the deposit slips
admitted in evidence, but did not work the corrected deposit because it was
never found.  Testimony showed that
Officer Rodriguez's investigation of the missing funds did not include the
bank.  Similarly, his superiors testified
that further investigation did not involve the bank.  Thus, that the corrected deposit was never found
is consistent with the admitted absence of an investigation involving the bags
up to and including the bank handlers of the bags.  Testimony showed that the bank had no records
to trace deposits to the bags.  Access to
bank bags once in the bank was undocumented; one or more individuals could work
a single bag. 

(c).  Access By Officer Rodriguez








Officer Rodriguez's
superiors testified that he was assigned to investigate, even though he was a
key witness in the events that were under investigation.  He testified that his procedure was to tug at
the bags to ensure they were locked, but he did not testify that the bags in
question were locked when he picked them up. 
The State adduced no evidence as to who accepted the two cafeteria bags
in question at the bank, who was present when a bank teller took any money out
of the bank bags, who knew whether any bank teller handled the bags improperly,
whether the bank bags were secured when received and worked, who opened the
bags if locked, and what happened to the bags once accepted by the bank until
the time they were worked.  Rather,
Officer Rodriguez, a key witness to the events in question, was assigned to
investigate.  The investigation went no
further than Martinez.[20]  

2.  Cash Handling Procedure

(a).  Combining the Contents of One Bag in Another
Bag








Assuming without
deciding that Martinez combined the deposits, the State did not adduce evidence
that she violated a cash-handling policy by doing so.  Assistant principal Riley's response to a
hypothetical question that she would not allow Martinez to combine the deposits
is negated by her subsequent testimony that combining deposits in one bag might
occur without her knowing it.  Although
Riley testified she would not have permitted Martinez to combine the bags if
done in her presence, she testified, "We don't combine money into one bag
unless she brings it that way and I am not aware of it."  Because Riley did not recall the key events Martinez
recounted regarding combining the bags in her presence, viewed neutrally her
testimony raises a reasonable contrary inference, namely, that Riley was new to
the school and need not question combining the contents of the bags in the
presence of the police courier.  Further,
the evidence does not negate Riley's presence in the secured room.  Someone provided access to the secured
room.  Martinez identified Riley as the
person in the room.  Riley was one of the
persons authorized to provide access.  

The column in the
school log requesting the amount of the deposit is blank on all transactions
recorded.  Completing the school log's
columns fully was apparently not mandatory. 


(b).  Return of the Incorrect Deposit

Martinez requested the
return of the deposit that was twenty dollars short in lieu of depositing the
amount less the twenty dollars.  The
procedure was consistent with bank policy, according to teller Ozuna.  Martinez admitted she found twenty dollars on
her desk.  She corrected the deposit in
the presence of a witness, her subordinate Zuniga.  Zuniga observed Martinez leave her office
with a bag.  Martinez testified she left
the office with two bags, one containing the corrected deposit and the other
containing the day's deposit and combined the bags.  Zuniga also testified that Martinez exited
the office behind her.  








Importantly, bank
teller Ozuna testified that if a deposit slip was the sole item in the bank
bag, she would probably return it on the assumption that someone forgot to
remove it from the bag.  Conversely, bank
policy required she call the school contact if the deposit slip showed a
discrepancy greater than ten dollars. 
Thus, a bank bag with only a deposit slip and no money included would
not be questioned, however but a bank bag with a deposit slip with a ten-dollar
discrepancy as to the money in the bank bag required inquiry and contact with
the person completing the deposit slip.  

(c).  The Jury's Role

By its verdict, the
jury rejected Martinez's testimony and her claim of innocence.  Martinez's written statement represented
that, while in the secured room, Officer Rodriguez requested she open the bag
in his possession and that Martinez place her bag in that bag.  At trial, she testified that Officer
Rodriguez requested she combine the two bags in her possession.  Martinez's testimony that she opened the bag
at some time other than when at her office at the request of the officer may
have raised a concern to the jury that she had removed the money.  

D.  Factual Sufficiency Disposition








In this case, the
ultimate facts in question included (1) appropriation of the currency and (2)
the specific intent to deprive the owner of it by deception.  A jury may infer intent from any facts which
tend to prove its existence.  See
Griffin, 614 S.W.2d at 159.  The
evidence demonstrates that Martinez knew that the money in the bag was to be
placed in the locked box inside the locked filing cabinet at the secured office
where it would be picked up by the officer and deposited by the bank.  She was the only one with a key to the bag
until it reached the bank.  

By its verdict, the
jury could have reasonably inferred that the deposit, if not removed by
Martinez, could not have been removed until the bag reached the bank
teller.  However, considering all of the
evidence in a neutral light, we must determine whether the jury was rationally
justified in finding that the State proved the essential elements of the
offense beyond a reasonable doubt.  Zuniga,
144 S.W.3d at 484‑85.  The question
we must answer is whether the evidence is factually sufficient to prove that
Martinez appropriated the deposit by deception. 
We have concluded that the circumstantial evidence is sufficient to meet
the legal sufficiency standard of review. 
We based our decision on inferences derived from the circumstantial
evidence.  We are mindful that
circumstantial evidence is direct proof of a secondary fact which, by logical
inference, demonstrates the ultimate fact to be proven.  Cowan v. State, 840 S.W.2d 435, 438
n.10 (Tex. Crim. App. 1992).  However,
proof which amounts to only a strong suspicion or mere probability is
insufficient.  Pedraza v. State,
34 S.W.3d 697, 700 (Tex. App.BHouston [14th Dist.]
2000, no pet.)  (citing Skelton
v. State, 795 S.W.2d 162, 167 (Tex. Crim. App. 1989) and ; Grant v.
State, 989 S.W.2d 428, 433 (Tex. App.BHouston [14th Dist.]
1999, no pet.)).  It is the appellate
court's function to ensure that no one is convicted of a crime except on proof
beyond a reasonable doubt.  Id.








Thus, our factual
sufficiency review requires we review the same evidence as in our legal
sufficiency review and contrary evidence. 
In our lengthy recitation of the facts viewed in a neutral light, we
have done so, mindful of the jury's role. 
That the jury disbelieved Martinez does not mean that they believed
Officer Rodriguez, the only other person who before leaving the bag at the
bank, handled the same bag that Martinez logged in and that she stated
contained the corrected deposit.  More
importantly, numerous inconsistencies in the lax security and cash-handling
measures involving the missing deposit lead us to conclude that, when
considered by itself, the evidence supporting the essential elements of
appropriation and deception is factually insufficient.  See
Tex. Pen. Code Ann. _31.01(1)(A), (4)
(Vernon Supp. 2005).  We find no
evidence, and the State does not direct us to any, that overcomes our
conclusion. 








Viewed in a neutral
light, evidence establishes that Martinez denied culpability.  The State's theory was essentially that,
because the deposit was missing, Martinez must have kept it.  Martinez acknowledged that, as cafeteria
manager, she was responsible to secure all deposits of proceeds from cafeteria
sales and leave them in the secured office for transport to the bank.  She turned the deposit over to Officer
Rodriguez.  Only the bank and she had the
keys to the bags.  The evidence does not
prove that the bags were locked when Officer Rodriguez received them, when he
left them with the bank, or when the bank tellers worked them.  Numerous tellers had access to the bags once
in the bank's possession.  The evidence
does not show whether anyone looked at or in the office bag that was marked in
the school log on the same day as the cafeteria bags or in the office bank
account to see if the deposit was mistakenly made in the wrong account. 

Faced with a record of
historical facts supporting conflicting inferences, we presume that the trier
of fact resolved any conflicts in favor of the prosecution.  See Jackson, 443 U.S. at
326.  While some evidence may raise a
question of credibility,  the State's
proof of Martinez's guilt is so obviously weak as to undermine confidence in
the fact finder's determination.  While
it was reasonable for the jury to conclude that MISD and supervisors expected
Martinez to perform the task of securing the deposit monies and ensuring that
they arrived safely at the front office, it is unreasonable to conclude that,
because the deposit did not make it into the MMS account, Martinez took it,
without more.  Significantly,  Martinez testified that she opened the bag
while in the secured office.  The
conflicts in testimony begin there.  The
investigation, however, stopped there.  

In short, we have
considered the evidence supporting both the verdict and evidence contrary to
the verdict.  See Zuliani, 97 S.W.3d
at 593.  Weighing all the evidence
under this balancing scale, we conclude that, on this record, the contrary
evidence is strong enough that the beyond‑a‑reasonable‑doubt
standard could not have been met.  Id.  We also conclude that the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Vodochodsky, 158 S.W.3d at 510.  We find insufficient facts for the jury to
have found Martinez guilty of theft by deception as a public servant beyond a
reasonable doubt.  We sustain Martinez's
fifth issue.  








IV. CONCLUSION

Because we sustain
Martinez's fifth issue as to the factual sufficiency of the evidence, we
reverse the judgment and remand for a new trial.  Clewis, 922 S.W.2d at 133‑34; Swearingen,
101 S.W.3d at 97.  Because our resolution
of this issue is dispositive, we need not reach the remaining issues.  Tex.
R. App. P. 47.1.

 

ERRLINDA CASTILLO

Justice

 

Publish.

Tex. R. App. P. 47.2(b).

 

Opinion delivered and filed

this 9th day of March, 2006.











[1] The information alleged that
Martinez unlawfully, intentionally, and knowingly appropriated by acquiring and
exercising control over property, namely United States currency of the value of
$50.00 but less then $500.00, from Carmen Ocanas Lerma, the owner, without her
effective consent by deception with intent to deprive the owner of the property
while Martinez was a public servant with possession, custody and control of the
property by virtue of her status as a public servant.  See Tex.
Pen. Code Ann. ' 31.03(f) (Vernon Supp. 2005).  





[2] We number the issues in the same
order as Martinez listed them in the table of contents in her appellate
brief.  By her first issue, she asserts
that the county court at law lacked jurisdiction because the district court has
exclusive original jurisdiction of misdemeanors for theft by a public
servant.  By her second issue, Martinez
maintains that the trial court erred in sustaining the State's objection to
"worthy of belief" questions posited to a defense witness.  By her third issue, Martinez asserts that the
trial court reversibly erred by denying her requested jury instruction on her
mistake of fact defense.  By her fourth
and fifth issues, respectively, Martinez asserts the evidence was legally and
factually insufficient to support a conviction of theft by deception because
the State failed to prove the essential elements of deception and consent.  We address the issues in the order we
consider dispositive.  See Tex. R. App. P. 47.1.





[3] Section 31.03 (f)(1) of the Texas Penal Code states:

 

(f) An offense described for
purposes of punishment by Subsections (e)(1)‑(6) is increased to the next
higher category of offense if it is shown on the trial of the offense that:

 

  
(1) the actor was a public servant at the time of the offense and the

  
property appropriated came into the actor's custody, possession, or

  
control by virtue of his status as a public servant;

 

Tex. Pen.
Code Ann. ' 31.03 (f)(1) (Vernon Supp. 2005). 





[4] Martinez raises the question of
jurisdiction of the convicting court for the first time on appeal, which she is
entitled to do.  See Gallagher v.
State, 690 S.W.2d 587, 588 (Tex. Crim. App. 1985) (en banc).  





[5] "District courts and criminal
district courts shall have original jurisdiction in criminal cases of the grade
of felony, of all misdemeanors involving official misconduct, and of
misdemeanor cases transferred to the district court under Article 4.17 of this
code."  Tex. Code Crim. Proc. Ann. art. 4.05 (Vernon 2005). 





[6] Article 5, section 8 of the Texas
Constitution states, "District court jurisdiction consists of exclusive,
appellate, and original jurisdiction of all actions, proceedings, and remedies,
except in cases where exclusive, appellate, or original jurisdiction may be
conferred by this Constitution or other law on some other court, tribunal, or
administrative body."  Tex. Const. art. V, ' 8. 





[7] Article 4.07 of the Texas Code of
Criminal Procedure states, "The county courts shall have original
jurisdiction of all misdemeanors of which exclusive original jurisdiction is
not given to the justice court, and when the fine to be imposed shall exceed five
hundred dollars." Tex. Code Crim.
Proc. Ann. art. 4.07 (Vernon 2005).





[8] The State does not argue that
article 4.05 does not apply; rather it maintains that, when article 4.05 is
read in conjunction with the "other laws" exception under the Texas
Constitution, article 4.07 granted the county court jurisdiction.  

 





[9] Martinez was charged with theft by
deception by a public servant.  See
note 1; see also Tex. Pen. Code
Ann. ' 31.03(f)(1) (Vernon Supp.
2005).  "Public servant" means
a person elected, selected, appointed, employed, or otherwise designated as one
of the following, even if he has not yet qualified for office or assumed his
duties including:  (a) an officer, employee,
or agent of government; (b) a juror or grand juror; (c) an arbitrator, referee,
or other person who is authorized by law or private written agreement to hear
or determine a cause or controversy; (d) an attorney at law or notary public
when participating in the performance of a governmental function; (e) a
candidate for nomination or election to public office; or (f) a person who is
performing a governmental function under a claim of right although he is not
legally qualified to do so.  Tex. Pen. Code Ann. ' 1.07.(41) (Vernon Supp.
2005).  The parties do not dispute that
Martinez was charged as a "public servant."





[10] Our Legislature has defined the
elements of an offense as the forbidden conduct, the required culpability, any
required result, and the negation of any exception to the offense.  Tex.
Pen. Code Ann. ' 1.07(a)(22) (Vernon Supp.
2005).  Jurisdiction is not an element of
an offense.  State v. Mason, 980
S.W.2d 635, 641 (Tex. Crim. App. 1998) (The concept of element of an offense
"does not include every issue to which the State has the burden of proof;
it does not include, for example, venue or jurisdiction." (citation
omitted)).  





[11] Martinez did not object on grounds
that the information alleged the essential elements of an official misconduct
offense to allow the trial court the opportunity to decide issues as to the
sufficiency of the allegations or to effect a pretrial transfer to district
court if it found grounds to do so.  See
Tex. Code Crim. Proc. Ann. arts.
21.29, 21.30 (Vernon 1989).  





[12] We also need not decide whether,
in a theft by deception offense involving allegations against a public servant,
a district court would be a court of competent jurisdiction under article 4.05
of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 4.05
(Vernon 2005); see State v. Hall, 829 S.W.2d 184, 188 (Tex. Crim. App.
1992) (en banc).  





[13] When relevant at all in a theft
prosecution, "deception" goes to the nature of the conduct and
becomes part and parcel of the circumstances surrounding the conduct of the
accused so as to render consent to the particular appropriation of property
ineffective, and to provide evidence of the accused's knowledge that consent
was, in fact, ineffective.  See
Skillern v. State, 890 S.W.2d 849, 871 (Tex. App.BAustin 1994, pet. ref'd).

 





[14] Testimony does not establish
whether Riley was the individual who provided access to the secured area by
unlocking both the office and the file cabinet. 





[15] The statement is defense exhibit
7B.





[16] Martinez testified that she
delegated, as needed, the process of leaving locked bank bags in the secured
area to Zuniga.





[17] Documents admitted in evidence
show Martinez was promoted to the position on September 5, 2000.  Martinez testified her last work day was
March 24, 2003.  





[18] A bank deposit slip dated August
28, 2002, shows a deposit was made on the same day for the cafeteria fund.  That deposit accounts for bag 2116, which
Officer Rodriguez testified he picked up on August 28, 2002. 





[19] Martinez testified that defense
exhibit 47 shows her writing "$43.50" and "317.50" as
cafeteria proceeds for August 29, 2002. 
Admitted as State's exhibit 4, two deposit slips dated August 29, 2002,
correspond with the amounts, respectively. 
Barrera testified that she worked the deposits on Saturday, August 31,
2002.  For August 29, 2002, the school
log shows that Martinez logged in bag 2119 and, thereafter, office secretary
Vilma Cruz logged in bag 3385. 





[20] Evidence showed a deposit for the
exact same amount of $298.85 made into the MIHS account in mid‑September.  However, Elena Flores, accounting coordinator
for MISD, testified that despite being for the same exact amount, that deposit
was from a different school, not MMS.  Flores
also testified that her office received a copy of the deposit slip from the
cafeteria, the color of which  reflects
the copy normally sent to the bank.  She
marked on it that the bank endorsement was missing so that she could
cross-check it with the monthly bank statement.